Good morning, and may it please the Court. Rachel Shalev for Mr. Donald Herrick. I'd like to reserve three minutes of time for rebuttal. All right. Try to watch your clock, but I'll also try to help you. Thank you. Mr. Herrick is a pretrial civil detainee who has been cut off from electronic communication with the outside world for the eight years that he has been awaiting adjudication. The defendants say it's common sense to completely cut him off, but the Washington Legislature doesn't think so. State statute allows even adjudicated residents of the SEC to possess Internet-enabled computers subject to appropriate and individualized limitations. And even criminal prisoners in Washington's prisons, both state and federal, can communicate electronically. It is unreasonable and unconstitutional not to allow Mr. Herrick to do the same. The district court, however, completely deferred to the SEC and ignored evidence that the blanket restriction here was an exaggerated response. The SEC is going to be given an awful lot of deference here. Our case law is just crystal clear on that point. And so I'm really struggling, as I have indicated not so subtly, with how we do this without knowing whether this person has a treatment plan. I think it's fair to infer from the existence of the addendum to the treatment plan that he does have a treatment program. But what cases like the Ombank decision in Morrow make clear is that it is inappropriate to restrict the rights of a pretrial detainee in order to force rehabilitation. And there is deference. There's no dispute about that. But as Bell v. Woolfish says, this Court will not defer even to detention officials, even on questions of order, when there is substantial evidence in the record that they have exaggerated their response. But let me try to understand first the scope of the challenge. Sure. So Mr. Herrick was at Alder, correct, and then moved to a different aspect of the facility? Correct. Okay. So there's obviously different security restrictions in the two facilities. Is this a blanket challenge, or are we looking at a challenge to where he is now? He's challenging two aspects of the policy that both completely bar him from communicating electronically with the outside world. There's the policy that governs on Alder Unit, which prevents residents from possessing even a non-Internet-enabled computer, notwithstanding the Washington statute that affords him that right. But he's not there anymore. He's not there now. He has retrospective damages claims. So let me just ask you on that, because it would seem to me that he might not have a prospective injunctive claim. And then if he has a retrospective damages claim, then, of course, we look at the Qualified Immunity and Eleventh Amendment and various other things. So with respect to Alder, he's no longer there. It's correct, but he faces a substantial risk that he will be returned to that unit. So for that reason, we think this is an injury that could recur and that warrants injunctive relief. So staying on this one for a minute, if we could, on Alder, my understanding from this set of briefs is that Alder is the highest management unit. I think we know from the previous case that that's not right. There is the intensive management unit that is more restrictive. So this is somehow in the middle. Is that right? It seems to be right. I mean, all the defendants say in their declaration is that it is subject to its own property matrix. Okay, well, here's why it matters. For example, and this is how rudderless I feel in this case. So, for example, if somebody gets put on the Alder unit, which at least in this briefing is described as the highest management unit, but let's just say even if it's a higher management unit and that it's not a good thing to be put there, that you're put there because you didn't comply with the rules or something, then the policy of not allowing somebody to have their own personally owned laptop, the reason for that could range from anything from a First Amendment communication concern, a therapeutic concern, to just a security concern that he might throw it at somebody, depending on what the outburst was that caused this person to be moved to Alder. So I'm really struggling with how we assess this without any kind of frame of reference. Well, no matter the restriction, even for persons in administrative segregation, the defendants, the detention officials here, still have to come forward with a common sense reason to justify their restriction. And when that common sense reason is refuted, as it is here, they have to defend it. So I'd like to. What do you say is refuted? What is it refuted? So if we're looking, for instance, at the ban on electronic communication, which includes the inability to access the Internet. That restricts me as a very common sense restriction in this type of facility, by the way. So why is that refuted? Where is that refuted? Sure. There are at least three reasons. And, in fact, the defendant's own evidence suggests that it's not a proportionate response. There's the Washington statute. The legislature looks at this very same facility and this very same concern with illegal pornography, but nonetheless rejects the notion of a blanket ban. They, in fact, create a right for individuals, even post-trial residents, to possess an Internet-enabled computer unless there's an individualized determination of harm. We don't have that here. You don't have that here because we don't have a treatment plan here? Or can you just fill in that sentence for me? Sure. This is a blanket policy that they applied to Mr. Herrick without any consideration of his individual circumstances. So the Washington legislature tells us that that's an exaggerated response to the very narrow problem of illegal pornography. So you, in that case, based on the statute, you wouldn't distinguish between the different units. Is that correct? That's right, because that statute says that even somebody who can see their rights restricted, who can be denied a certain type of computer, still has the right to possess a limited-use computer. But it's not just the Washington statute. It's also the decision of prison administrators in Washington State, in both state and federal prisons, to allow even criminal inmates, sex offenders among them, to have at least some form of electronic communication. They can send e-mails. It's a very different type of facility without a therapeutic purpose, if we're talking about a correctional facility as opposed to this SEC, very special type of facility. Hence, right at the outset, at the top of the decision tree, the institution has a different purpose. One's punitive. One's not punitive. One's therapeutic. Well, I'll remind you that according to the Morrow decision in footnote 1, I believe, pretrial detainees cannot have their rights restricted in the interest of rehabilitation. And it's also – Well, that sentence, that has to be put into context. Can't have their rights restricted in the interest of rehabilitation? They can have their rights restricted if it's therapeutically indicated, if it's going to be a danger facility or compromise the therapeutic environment. Surely you would agree with that. If there's a security risk, that is an appropriate reason to restrict the rights. If it's not a therapeutic risk? Morrow, Hurst, you cannot force rehabilitation on someone like Mr. Herrick, who has not yet been determined to be in need of rehabilitation. So that may be just a question of semantics of whether restrictions like this are, in effect, punitive and rehabilitative, which is how I understood that footnote, as distinguished from operating within the facility, given the nature of the reason that the individual is put there. So I'm not sure how much we can stake on that footnote when we don't have a record that looks at a particular reason for, quote, rehabilitation versus therapeutic plan. I mean, therapeutic plan is not necessarily coextensive with rehabilitation. Would you agree with that? I think the way that they've used the term, they haven't distinguished it. But I take your point, and I'll assume that rehabilitation is an appropriate purpose here, but that still means that the defendants have to draw a proportionate connection between the restriction and the policy. So you seem to be, I take it from your brief, you're making a facial challenge. Is that right? We're focused in particular on the fact that Mr. Herrick is a pretrial civil detainee and that that status entitles him to more considered treatment and that these policies, as applied to him, fall a foul on him. Well, you haven't really talked about how it applies to him. I mean, you're talking about the broad restriction is invalid. So aren't you making a facial challenge? To the extent that other pretrial civil detainees are in Mr. Herrick's position, it might have consequences. But here's the key point. Let me interrupt you for just a second. So the policy that you're challenging says it prohibited items, any item, device, or information that represents a threat to safety or security of the institution or which may negatively impact the goals of the treatment program is prohibited. What's wrong with that? This is a blanket policy that doesn't just bar dangerous or inappropriate material. It keeps Mr. Herrick from all forms of online expression, safe forms, productive forms, protected forms. Look at what he can't do. He can't send an email to his adult daughter who wants to keep the connection with him. He can't read the New York Times. He can't even watch the live stream of this argument. Cases like Packingham and this Court's decisions in the United States against Riley and Dovey Harris make clear that the First Amendment, especially Internet communication, is too important and alternative means, less restrictive means of regulating the government's interests, are too readily available to justify blanket bans on a whole range of protected activity. I struggle to figure out whether this is a facial challenge or not, but it kind of reads to me as though it is. If we want to talk about your client in particular, it's easy, I think, if we look at the reported case, at least one of them involving your client, where he's trying to send a message to a girlfriend or former girlfriend to get information about how to cheat a test. That's the kind of detainee, it seems to me, that for therapeutic reasons, that would be really good reasons to not want that individual to have access to the Internet to hopefully encourage him to engage in treatment rather than trying to circumvent it, for example. So I just really struggle to see what's wrong with this policy. So in that treatment addendum, there is no indication that Mr. Herrick has abused the Internet. What he's asking for is just— Well, there is, right? There's an episode where they did an examination of his laptop and they thought that he had access to it and breached the policy. And I know about the lie detector test, and I appreciate that that worked out the way it did. But we say there's no indication. I guess I take issue with that. They took his computer because they thought he accessed Facebook to find out how his daughter was doing at boot camp. So, you know, that's not a dangerous purpose. But I want to— Right, but he did violate the policy. Right, but the question is, is that policy a legitimate proportionate means of attacking a narrow category of— I'd go back to my original question about Alder versus—I'll call it the step-down unit. Because if it's a facial attack, it makes a difference as to whether it's looking in general or are we looking, for example, let's say Alder. And let's assume just for talking purposes that they're— given the potential risk of return, he still has standing and it's not moot given his transfer. Do we look at Alder differently than the other facility? There's still this threshold showing that the defendants have to make that this is a legitimate policy. And I want to make sure that we— You're saying that—but do they make that— do they need to just make that globally or do you think they need to make it as to the particular institution or subset of the institution? You know, it might be appropriate for them to have different rules for different units. That might be one way, an intermediate way. But they do have a different rule, we know, for Alder, right? I mean, the Internet ban applies to everybody, no matter their restriction. It might be appropriate to limit that policy to different categories of confined persons. They're not doing that here. I do want to make sure that we don't forget that Mr. Herrick has a substantive due process conditions claim that the district court dismissed even though the defendants did not seek summary judgment on that claim. That is a strong claim. Under this Court's decision in Jones v. Blanas, Mr. Herrick is entitled to a presumption that that blanket restriction is punitive. The defendants can rebut that, but they have to rebut it. If the Court doesn't have further questions right now, I'd like to reserve the remainder of time for rebuttal. You may. Thank you. Good morning, Your Honors. May it please the Court. My name is Craig Minge here on behalf of the defendants. This Court should affirm the trial court's dismissal of Mr. Herrick's claims for three reasons. First, the Court properly applied the Turner Standard to Mr. Herrick's First Amendment claim and dismissed that. Secondly, the trial court properly determined that Mr. Herrick received all process that was due when the defendants confiscated his computer to investigate whether or not he had accessed the Internet on that computer. And third, to the extent Mr. Herrick raised a substantive due process claim below, the Court properly dismissed that as well. First of all, with respect to the First Amendment claim, Turner is the appropriate standard for this Court to consider that claim here today. First, as a threshold matter, Mr. Herrick agreed that Turner was the appropriate standard below. Second, the cases cited by Mr. Herrick for this Court are cases that involve persons who are in the community and they don't involve the Turner situation and they don't involve the Youngberg situation where there's an institutional interest involved and the State has a significant interest and the courts have routinely indicated that they would defer to that interest. Finally, the cases in this Court's sister circuits have applied Turner in these circumstances. At least six sister circuits have applied Turner in civil detainee cases. To First Amendment claims? To First Amendment claims. What about the substantive due process claim? That's not as clear, Your Honor. The Turner certainly, there's case law indicating that Turner can be applied to claims that are beyond other than First Amendment claims. It balances the State's interest in those claims in the same manner. However, not directly to substantive due process claims in a civil detainee context. Let me ask you on the Turner. Let's just assume you get by-pronged one on the institutional security and other reasons. The question is whether this prohibition, which is a broad-blanket prohibition, is too broad or whether there's some alternative channels available or not available. So if you can't get on the Internet at all, what are the alternative channels that are equivalent or appropriate? Thank you, Your Honor. First, with respect to placing, and according to the second factor of the Turner analysis, the first step is to place the right in the context of what is being asserted. And in this case, it is a right to communicate with the outside world. There's no independent right to communicate electronically with the outside world. It is a right to communicate with the outside world. So when you're looking at alternatives within the institution that are offered here, he had the right to visit. He had the right to receive visitors. He had the right to write letters. He had the right to even write letters on his computer once he had the computer. He has the right to receive periodicals. So there's all sorts of rights, ways in which the SEC offers Mr. Herrick the right to communicate with the outside world. But the practical matter is that given the vast array of information on the Internet and the fact that that's really the device or the platform du jour for receiving information, how can you justify a complete ban? Your Honor, based on, for the same reasons that the Court indicates, that the Internet is a unique position, it is also unique. It can be uniquely used for nefarious purposes. Well, what about the ability to use a computer without Internet access? And so with respect to the computer actually offering the computer without Internet access, the ban is specifically limited to the Alder unit. And then beyond that, if there's a specific prohibition in the resident's treatment plan that precludes them from utilizing the Internet, then they could also be or utilize them from using a computer. They could also be banned in those circumstances. Do people awaiting hearings have treatment plans? Yes. Certainly on this record, there's a treatment plan addendum identified. Mr. Herrick talked multiple times about how he met with his treatment team. He's provided with a treatment team. And third, he talks about having his case manager review different materials, so he's provided a case manager as well, a therapist case manager. So as my colleague indicated, it's very difficult to provide treatment to people that do not want treatment or to develop some of these things in those circumstances. How does the statute play into all of this? Because it seems to, it's like first it says, if you have a treatment plan that says it's harmful, then you can't even have a computer itself. So I take it that the statute doesn't talk about the Internet. Is that correct? Correct. The reference to the Internet is in Subsection B. And so Subsection A provides that the person committed or detained may not possess a computer if they're, and it's a mandatory prohibition, not a mandatory provision of that right. If the plan calls for that. Yes, if the plan calls for that. Then Subsection B says if they are not allowed to have a computer, then they must be given a limited functioning, they must have access to a limited functioning computer capable of word processing and limited data storage that does not have access to the Internet, that specifically does not have access to optical devices, capability to display photographs, images, videos, or motion pictures, or similar display capability. But that Subsection B does not mean that a Subsection A computer must have all of those things. I think that's a stretch to read that statute in that manner. But even you don't get Subsection B if you're in ALDR. Is that right? I'm not sure you are. I think you're authorized to get Subsection B on ALDR unit. I think what Mr. Herrick was complaining about is he was not allowed to purchase a personal computer while on ALDR unit. Not that he was after he purchased it. You think he could have possessed it while he was in ALDR? No, I apologize. Did I misunderstand your answer? No, I think Mr. Herrick was complaining that he did not get a Subsection A computer. There's no indication that he attempted while on ALDR to purchase a Subsection B electronic word processor. Or to have a computer that was somehow limited. So it's your position that the facility's current policies comply with this statute 7109080? I believe with respect to Subsection A computers on ALDR unit, there is admittedly the persons who live on ALDR unit do not have a right to a Subsection A computer. And that's not contained. There's not a treatment plan addendum on their individual treatment plans that indicate they're not able to have a computer. So with respect to A, that is not on the ALDR unit. Does that mean the answer to my question is? Is that a violation of the state? Does he have a state RCW violation claim as a result? Because it doesn't say anything there about ALDR. For purposes of this argument, Your Honor, I do not believe that that Subsection A claim, if there is a state law claim with respect to there, defines this Court's analysis with respect to the constitutional resolution. That's not my question. Has he made a statutory claim that we should look at under the Washington Code? He made a number of state law claims below that were dismissed. I do not believe one of them was 7109080, the Subsection A. It seems like nobody here knows what claims are in front of us or not. I mean, the last argument is, well, some of these policies changed, but some didn't, and that's like kind of a floating situation here. So in your view, is the claim in front of us a facial challenge to the Washington policy? It does not appear to be, I think, with respect to how this case is framed both below and in this case. Counsel, I'm having a hard time with your answer. I just wanted to know, and I'm not trying to be difficult, but I really don't understand your answer. I'm looking at this statute, the Washington Revised Code 7109080, and my question is, do the current policies comply with this statute? And your answer is what? The Alder Unit Ban on Personal Computers do not comply with the Subsection A of that statute because there's no personal finding in each individualized treatment plan. That the computer is counter-indicated. Right. Okay. Thank you. May I ask you a question about access while a detainee is in the Alder Unit to the Pierce College Computer Lab? Computer? Yes. Are they allowed or not? Yes, Your Honor, they are allowed. So even if you're in an Alder Unit, you're allowed to go to the computer lab and use that computer. Is that true? Yes, pursuant to the specific offerings that are made in the Pierce College Computer Lab. Well, what does that mean? Part A indicates that a person, let's say on an Alder Unit, right, shall be prohibited from possessing or accessing a personal computer if their treatment plan requires it. So in response to my question, you told me you think that they're not in compliance with Subsection A because they don't necessarily require that their treatment plans counter-indicate access to a computer or possession of a computer. But in response to the Chief's question, you're now clarifying that even a guy on Alder who can't have a computer with him could go to the computer lab. Is that right? Yes. So doesn't that put you back in compliance with Subsection A? Well, the record's not fully developed with respect to what access is occurring at Pierce College. That's what I was going to ask you. I mean, do you get a computer or do you get access to the Internet over there? Right. My understanding is there's no access to the Internet, period. Well, certainly the Pierce College Computer Lab has classes that are accessing the Internet. Right. This is the problem with the record. I mean, he says in his treatment plan addendum, it's checked. He can not, because of his violation, he may not possess or access a personal computer, but is allowed to access the computer in the SCC Pierce College Computer Lab. So I mean, I would think that would be your argument that that's an alternative means of communication. The computer lab isn't a computer lab in the sense that you have full access to the Internet and have full access to word processing. No, I'm sure not, but that's not the real issue. They're arguing a blanket ban, and I don't see anything in here that indicates that he was completely prohibited from using a computer. We don't know from the record what the computer lab's capability is or whether they access the Internet or whether it's monitored or whether it's, but, you know, I'm struggling to figure out what's really going on in terms of computer access and what's allowed at the facility. Correct, John, and with respect to the treatment plan addendum, it does reference that there's a ban on the computer, there's a secondary ban on both the computer possession and access to the Pierce County College Computer Lab, or no ban or that he can't use a computer. Right. So they have a, you could say the most extreme thing is you're not allowed to access the SEC Computer Lab, but he wasn't on that. The checkmark is he's allowed to access a computer at the Pierce College Computer Lab, although conditions may apply. Correct, John, and that timeframe was during the period with which he was under the six-month suspension under his computer use. That six-month suspension is when they took his own laptop away. Yes. During that time, was he on ALDR? No. When he was on ALDR, did he have access to the computer lab? It's unclear. Presumably without that treatment plan, treatment team indicating he can't access the computer lab, he would be able to avail himself to those procedures. I don't know what that means. The record's not clear, Your Honor. Okay. Maybe that's why you're unclear as well. I mean, you can't just make these statements, and I'm like I'm looking in the record and trying to figure out. I think general residents would be able to access the Pierce County College Computer Lab. Of which we don't know the extent. Right. Okay. So, anyway, with respect to the remaining Turner factors, I think the treatment, factor one, the treatment, I want to make that point that the treatment is a valid reason for the institution to maintain a policy. Not only for a specific resident, but for maintaining a therapeutic milieu. And when you introduce the contraband as found by the legislature, as discussed by the IT manager of things that have occurred in the facility, it creates real problems with not only safety and security, but the treatment milieu. Just quickly, forgive me for interrupting, but your opposing counsel said that there's a substantive process claim in here that was dismissed without the state moving to have it dismissed, and you opened by saying it should have been dismissed. So could you speak to that just quickly? Yes, Your Honor. When you speak to, first of all, the Jones presumption was not raised in the court below. There was no indication of any alternatives that would give rise to the level of a Jones presumption at the dismissal phase in the district court. Secondly, as the courts look at Turner versus Youngberg on the substantive due process claim, both cases, both interests are looking at the legitimate governmental interest, non-punitive with respect to Youngberg analysis, substantive due process analysis, versus a legitimate government interest with respect to Turner. Both cases, both standards call for a deference to the governmental officials and deference to the determinations made by the prison officials, and therefore even if this case is analyzed under the substantive due process analysis, it's the same result with respect to the governmental interests involved and that this is a reasonably related policy to the governmental interests proposed. Thank you. Thank you, Your Honor. Thank you. I'd like to start with that last point. To put it bluntly, Mr. Herrick can lose on the First Amendment claim and still win on the substantive due process claim. There are at least three reasons for that. First, as the court said in Demery against Arpaio, to prevail on a conditions claim, a plaintiff does not need to show an independent First Amendment violation. Second, as this court said in Bullock against City of San Francisco, the court affords greater deference to detention officials under the Turner test than it does under the Bell conditions test. And third, Mr. Herrick has the benefit of this presumption in Jones against Blanas that the court has applied even when taking judicial notice of material. It did that recently in King against County of Los Angeles. And so what's the basis of the substantive due process claim? It's the same challenge to these limits on computer functionality and capability. Not the seizure of the computer. No, he has procedural due process claims related to that? I was just going to say, that one is pled as a procedural due process claim, which we haven't talked about at all. But the First Amendment claims about accessing the computer and accessing the Internet, you're pleading as First Amendment and 14th Amendment substantive due process? Yes. Mr. Herrick says at ER 116 that these functionality limitations violate his 14th Amendment rights. He says at ER— Yeah, but he also says Sixth Amendment rights. I'm just struggling to get my arms around it. But I think you've answered my question about that. It's basically the same claim, though. But it's analyzed differently. I understand, assuming that you decide that you can analyze it given that he has a very specific First Amendment claim. You can. Bell v. Wolfish looks at them separately. Bell does that. And I do want to stress, none of these residents in any of the units have access to the Internet at all. It's not just— How do you know that from the Pierce Lab? Sure. Well, first of all, Mr. Herrick says that at District Court Docket 78 at 8. But the defendants also defend the policies that he's challenging on the ground that they restrict computer functionality. That's ER 98. Well, sure. I'm sorry, that they restrict Internet access specifically. Pardon me. So let me ask you this question. On his computer, they found that he had accessed PornHub.com. Would you agree that that is likely not something that one should access on a treatment plan in this facility? Yeah. I mean, he has reports showing that he didn't. But we completely agree that that material can be excluded. And the point is that Mr. Herrick himself identified virtually costless ways that the SEC could exclude inappropriate material without also banning all appropriate access to monitoring software. Well, his view is you could put some filtering and that the inmate could pay for the filtering. But then, of course, that doesn't address the changing circumstances, the administrative costs and all of that. Well, I mean, if he's paying for it, there's almost no cost on the facility and certainly no cost to their legitimate interest because that would screen out the very narrow band of material they're worried about. Because the District Court misapplied the substantive law and ignored material disputes of fact, we ask that you reverse the judgment and remand with instructions to appoint counsel for Mr. Herrick. Thank you. Thank you for the argument in this case. Herrick v. Quigley is submitted. I'd also like to thank you, Ms. Shaley, for participating in the pro bono program. I think, as in the case before, it's always easier also for the court and for the government to respond to a well-crafted brief and also thank the Attorney General for your argument this morning. The court is now adjourned.
judges: Thomas, McKeown, Christen